UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Steve Jankowski and
Peter Scott,

      Plaintiffs,                      **MEMORANDUM OPINION
                                                  AND ORDER**
v.                                                     Civil No. 11-3392 (MJD/LIB)

City of Duluth and
Jim Nilsson, individually and
in his official capacity as Police
Officer for the City of Duluth,

      Defendants.
_____

      Mark W. Peterson, Mark W. Peterson Law Office, and Nathan W. Kellum and Jonathan Scruggs, Alliance Defense Fund, Counsel for Plaintiffs.

      M. Alison Lutterman, Deputy City Attorney, and Nathan N. LaCoursiere, Assistant City Attorney, Counsel for Defendant City of Duluth.
_____

      This matter is before the Court on Defendant Officer Jim Nilsson's motion for summary judgment based on the doctrine of qualified immunity.

## I.    Background

      For purposes of this motion, Officer Nilsson does not dispute the facts as set forth in the Complaint.

Plaintiffs brought this action in order that they may engage in religious expression at the Bentleyville Tour of Lights ("BTL"), which takes place at the Bayfront Festival Park ("Park") located in the city of Duluth. On November 27, 2010, Plaintiff Peter Scott was engaged in religious expression at BTL, which included the distribution of literature and engaging others in dialogue about his faith. (Complaint ¶ 42.) Scott alleges he placed himself outside the flow of pedestrian traffic so as not to block or create congestion, and that he did not harass anyone or otherwise create a disturbance. (Id. ¶ 46.) At approximately 9 p.m., he was approached by Officer Nilsson. (Id. ¶ 47.) The two engaged in a brief discussion about religious topics, after which Officer Nilsson walked away, but remained within earshot. (Id.) A short time later, Officer Nilsson again approached Scott and ordered him to cease his religious activity on the basis that the BTL event was not an appropriate place for such expression. (Id. ¶ 48.) Scott did cease his expression for fear of being arrested and left the grounds, but returned when he observed Officer Nilsson leave. (Id. ¶¶ 49-51.)

Upon Scott's return, after again engaging in religious expression, he was confronted by officials of the non-profit that managed the BTL. (Id. ¶ 53.) A heated discussion ensued concerning the First Amendment, ending when the

officials seized the camera that Scott's friend was using, causing Scott to call the police. (Id. ¶¶ 54-56.) Upon their arrival, Officers Thamm and Sheen were able to control the situation. The police officers did not order Scott and his friend to leave, nor did they give him any assurances that he was free to return to continue his religious expression. (Id. ¶ 60.)

Plaintiffs thereafter brought this action, asserting claims under 42 U.S.C. §§ 1983 and 1988, and arguing that the City "enforces the decisions of Bentleyville officials to silence and exclude speakers from Bayfront Festival Park for any reason whatsoever, including content-based and viewpoint-based reasons, which effectuated a First Amendment ban on [Plaintiff's] expression." (Id. ¶ 73.)

On December 20, 2011, the Court adopted the Report and Recommendation of Magistrate Judge Leo Brisbois, and granted Plaintiffs' motion for preliminary injunctive relief. The Court ordered the following injunctive relief:

> Defendants are hereby enjoined from interfering with or prohibiting Plaintiffs and other third party speakers from engaging in protected expression, in the form of peaceful distribution of literature, display of signs and engaging in dialogue, in Bayfront Festival Park during the 2011 Tour of Lights event and all other future Tour of Lights events that are governed by the Bentleyville Tour of Lights Agreement 2010-2013, or until further Order of this Court.

3

## II. Qualified Immunity

In his initial memorandum, Officer Nilsson argued that he is entitled to qualified immunity because, even accepting as true Plaintiffs' allegations against him, the law was not clear that he was violating Scott's First Amendment rights when he approached him at the BTL, after receiving a complaint from BTL management that Scott was disturbing guests, and informed Scott that BTL was not the appropriate place for his activities.

Plaintiffs responded by asserting that Officer Nilsson's motion is premature, as additional discovery is needed to determine whether Officer Nilsson did, in fact, receive complaints about Scott prior to approaching Scott. In addition, Plaintiffs alleged that Scott ordered him to cease his activities, in addition to informing Scott that BTL was not an appropriate place for his religious expression.

In his reply brief, Officer Nilsson argued that his motion is based on the assumption that Scott experienced a deprivation of his First Amendment rights when Officer Nilsson informed[1] him to leave the BTL. He argues that

---

[1] In his supporting memoranda, and at oral argument, Officer Nilsson characterized the interaction between Scott and himself as a "conversation" and that Officer Nilsson "informed" Scott that BTL was not an appropriate place for his religious expression. For purposes of this

4

independent of whether he received complaints about Scott's behavior, Officer Nilsson is entitled to qualified immunity. (Def.'s Reply Mem. at 3-4.)

**A.    Standard**

When bringing a Section 1983 claim a plaintiff must establish (1) that he was deprived of a right secured by the Constitution or laws of the United States and (2) that the deprivation was committed under color of state law. Lugar v. Edmondson Oil Co., 457 U.S. 922, 931 (1982). "Qualified immunity protects a government official from liability in a section 1983 action unless the official's conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known." Henderson v. Munn, 439 F.3d 497, 501 (8th Cir. 2006) (citations omitted). "The purpose of qualified immunity is to allow public officers to carry out their duties as they believe are correct and consistent with good public policy, rather than acting out of fear for their own personal financial well being." Sparr v. Ward, 306 F.3d 589, 593 (8th Cir. 2002) (citation omitted).

To determine whether officers are entitled to qualified immunity, the Court

---

motion, however, Officer Nilsson "adopted plaintiffs' own factual contentions." (Def. Reply p. 1, 2.) As Plaintiffs alleged that Officer Nilsson "ordered" Scott to leave BTL on the night in question (Comp. ¶ 48), the Court will frame the qualified immunity issue accordingly.

must consider whether the officers violated a constitutional or statutory right and whether such right was clearly established at the time of the alleged violation. Saucier v. Katz, 533 U.S. 194, 201 (1985). "Whether a given set of facts entitles the official to summary judgment on qualified immunity grounds is a question of law. But if there is a genuine dispute concerning predicate facts material to the qualified immunity issue, there can be no summary judgment." Greiner v. City of Champlin, 27 F.3d 1346, 1352 (8th Cir. 1994) (citations omitted). For purposes of this motion, Officer Nilsson concedes that Scott experienced a constitutional deprivation.

"To determine whether a right is clearly established we ask whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." White v. McKinley, 519 F.3d 806, 813 (8th Cir. 2008) (quoting Clemmons v. Armontrout, 477 F.3d 962, 965 (8th Cir. 2007)). "This inquiry turns on the 'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'" Wilson v. Layne, 526 U.S. 603, 614 (1999). As applied here, the question is whether the law was clear that the Park remained a traditional public forum despite the fact that the City and the non-profit had entered into a use agreement granting the

non-profit the right to hold the BTL at the Park, and that as a result, Scott was free to engage in expressive activities.

   B.   **Nature of the Forum**

Generally a municipality may not "destroy the 'public forum' status of streets and parks which have historically been public forums." U.S. Postal Serv. v. Council of Greenburgh Civic Ass'ns, 453 U.S. 114, 133 (1981). There will be exceptions when private actors lease all or part of a public park for their private use. Id. Courts that have addressed this issue directly have concluded that, while traditional public fora may lose their public character under some circumstances, they do not do so when a private actor assumes non-exclusive control of an area to hold an event to which the public has free and open access. See Parks v. City of Columbus, 395 F.3d 643, 652 (6th Cir. 2005); accord Startzell v. City of Philadelphia, 533 F.3d at 197; Dietrich v. John Ascuaga's Nugget, 548 F.3d 892, 899 (9th Cir. 2008). See also Zalaski v. City of Hartford, 838 F. Supp. 2d 13, 36-37 (D. Conn. 2012) (finding that based on Parks and Startzell, issuance of a permit to use a public forum does not transform status of public forum); Johnson v. Minneapolis Park and Recreation Bd., Civil No. 12-806, 2012 WL 2119268, at *7 (D. Minn. Jun. 11, 2012) (finding that public parks retain public fora status even

7

where a private actor assumes non-exclusive control to an event that is free and open to the public). A municipality "cannot . . . claim that one's constitutionally protected rights disappear [where] a private party is hosting an event that remain[s] free and open to the public." Parks, 395 F.3d at 652.

Officer Nilsson argues that First Amendment forum analysis is not clear, citing to Reinhart v. City of Brookings, 84 F.3d 1071 (8th Cir. 1996); Wickersham v. City of Columbia, 481 F.3d 591 (2007); Villegas v. Gilroy Garlic Festival Assoc., 541 F.3d 950, 957-58 (9th Cir. 2008); Rundus v. City of Dallas, Texas, 634 F.3d 309, 312-15 (5th Cir. 2011); United Auto Workers v. Gaston Festivals, Inc., 43 F.3d 902 (4th Cir. 1995). As this Court already determined, however, these cases are inapposite as they each resolve the claims before it by concluding that there was no state action. As a result, there was no need for those courts to conduct an analysis as to the nature of the forum. See Memorandum Opinion and Order at 15-16 [Doc. No. 33].

Contrary to Officer Nilsson's arguments, the law was clearly established as of November 2010 that a public park remains a traditional public forum when a private event takes place in the park, and the event is open and free to the public. While the Eighth Circuit has not yet addressed this specific issue, the many

8

courts that have done so have each adopted and applied the reasoning set forth in Parks. See, e.g., Startzell, 533 F.3d at 197; Dietrich, 548 F.3d at 899 (9th Cir. 2008). The courts continue to apply the Parks analysis as demonstrated in recent opinions. See, e.g., Teesdale v. City of Chicago, __ F.3d __, 2012 WL 3240696, at *5 n. 1 (7th Cir. Aug. 10, 2012); Bays v. City of Fairborn, 668 F.3d 814, 820 (6th Cir. 2012) (recognizing that whether a municipality has the power to transform a traditional public forum to a limited or nonpublic forum is an open question, it was clear that a community park that hosts a private event that is open and free to the public remains a traditional public forum). As there is a complete lack of authority contrary to Parks, the Court finds that Officer Nilsson is not entitled to qualified immunity based on the facts as alleged by Plaintiffs in their Complaint. Cf Wilson v. Layne, 526 U.S. 603, 614-15 (1999) (finding that it is unfair to subject the police to damages claims where the law is undeveloped and a split among the federal circuits developed during the pendency of this case).

**IT IS HEREBY ORDERED** that Defendant Officer Jim Nilsson's Motion for Summary Judgment on Grounds of Qualified Immunity [Doc. No. 41] is DENIED.

Date:   September 28, 2012

s/ Michael J. Davis
Michael J. Davis
Chief Judge
United States District Court

Civil No. 11-3392