UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Steve Jankowski and
Peter Scott,

    Plaintiffs,	**MEMORANDUM OPINION AND ORDER**

v.	Civil No. 11-3392 (MJD/LIB)

City of Duluth and
Jim Nilsson, individually and
in his official capacity as Police
Officer for the City of Duluth,

    Defendants.

_____

    Mark W. Peterson, Mark W. Peterson Law Office, Nathan W. Kellum, Center for Religious Expression and Jonathan Scruggs, Alliance Defending Freedom, Counsel for Plaintiffs.

    M. Alison Lutterman, Deputy City Attorney, and Nathan N. LaCoursiere, Assistant City Attorney, Counsel for Defendant City of Duluth.

_____

This matter is before the Court on Defendant City of Duluth's motion to vacate the preliminary injunction [Doc. No. 104] and Plaintiffs' emergency motion to enforce preliminary injunction and for contempt [Doc. No. 109].

**I.    Background**

Plaintiffs brought this action to ensure that they may engage in religious

1

expression on the grounds where the Bentleyville Tour of Lights ("BTL") takes place at the Bayfront Festival Park ("Park") located in the city of Duluth ("City"). Plaintiffs have asserted claims under 42 U.S.C. §§ 1983 and 1988 arguing that the City "enforces the decisions of Bentleyville officials to silence and exclude speakers from Bayfront Festival Park for any reason whatsoever, including content-based and viewpoint-based reasons, which effectuated a First Amendment ban on [Plaintiff's] expression." (Complaint ¶ 73.)

Plaintiffs sought preliminary injunctive relief in November 2011, to prevent the City and its police officers from interfering with their rights of free expression at the BTL. To determine whether Plaintiffs were entitled to the relief sought, Plaintiffs had to demonstrate that the expressive activity at issue is speech protected by the First Amendment, that the nature of the forum was public, and that the "justifications for exclusion from the relevant forum satisfy the requisite standard." Cornelius v. NAACP Legal Defense & Educ. Fund, Inc., 473 U.S. 788, 797 (1985).

The Court found that the parties did not dispute that the expressive activity was speech protected by the First Amendment. (Memorandum Opinion and Order at 10, adopting Report and Recommendation dated December 13, 2011

(Doc. No. 33).) The Court next analyzed the nature of the forum. In reviewing the law applicable to this issue, the Court found that pursuant to numerous decisions addressing similar issues, traditional public fora do not lose their public character "when a private actor assumes non-exclusive control of an area to hold an event to which the public has free and open access." (Id. at 10.) Based on the record before it, the Court found that pursuant to the agreement between the City and BTL organizers (the "Bentleyville Tour of Lights Agreement 2010-2013") BTL organizers were not granted any authority to exclude anyone from the Park, and were required to keep the event free and open to members of the public. (Id. at 18.) Accordingly, the Court found that the Park retained its public character under the Bentleyville Tour of Lights Agreement 2010-2013.

Finally, because the City had failed to articulate any government interest served by enforcing the BTL organizers' decision to ban the type of expressive activity Plaintiffs sought to engage in, the Court found that Plaintiffs had demonstrated a likelihood of success on the merits of their claim that the City's actions violated their First Amendment rights. (Id. at 19.)

By Order dated December 20, 2011, the Court granted Plaintiffs' motion and ordered the following injunctive relief:

3

> Defendants are hereby enjoined from interfering with or prohibiting Plaintiffs and other third party speakers from engaging in protected expression, in the form of peaceful distribution of literature, display of signs and engaging in dialogue, in Bayfront Festival Park during the 2011 Tour of Lights event and all other future Tour of Lights events that are governed by the Bentleyville Tour of Lights Agreement 2010-2013, or until further Order of this Court.

Subsequent to the Court's Order, the City adopted a First Amendment Zone policy for the Park ("Policy"). (Lutterman Affidavit, Ex. 1.) Pursuant to this Policy, persons wishing to engage in expressive activity "are required to confine their activity to the Zone during those times when event permits have been issued for events occurring at the Event Bowl or the Bayfront Park Plaza. Use of the Zone is not required when permission to engage in the expressive activity has been granted by the permit holder." (Id. at 2.) The Policy is published on the City's official website, at www.duluthmn.gov/parks/pdf files/First Amendment Zone Policy.pdf.

On October 4, 2012, the City and the organizers of the BTL entered into a new agreement concerning the use of the Park for the BTL, entitled the "2012 Exclusive Use Permit for Bayfront Festival Park." (referred to herein as the "2012 Agreement") (Affidavit of Nathan LaCoursiere, Ex. A.) Pursuant to the terms of the 2012 Agreement, it "supersedes any other agreement between the parties and

all such earlier agreements shall be terminated upon approval of this AGREEMENT." (Id. ¶ 1.)

The 2012 Agreement grants the Bentleyville Tour of Lights, Inc. ("BTLI") exclusive use of the Park, with certain listed exceptions, for the "sole purpose of conducting a holiday lighting display with related concession activities." (Id. ¶ 2.) The listed exceptions are the Playfront Park, the ice rink, any First Amendment Area established by the City and Lots A, B, C and D. (Id.) As consideration for such exclusive use, BLTI has agreed to pay the City $3,500. BLTI has also agreed to pay a $2,000 deposit to ensure that the Park is restored to its original condition after the BTL is complete. (Id. ¶ 4, 4.1.) The City also agreed to pay any electricity costs exceeding $5,000 incurred during the BTL event. (Id. ¶ 4.2.) The 2012 Agreement also makes clear that the City and BTLI are not partners or involved in a joint venture. (Id. ¶ 13.) The City did reserve the right of access to the Park for authorized personnel, and that on-duty police officers, acting in their official capacities, are authorized to enter the Park. (Id. ¶ 15.4.)

Plaintiffs assert that they did not receive notice of the 2012 Agreement until November 14, 2012 - three days before the opening of the 2012 BTL. Such notice

was provided by counsel for the City in an email with the 2012 Agreement attached, notifying Plaintiffs of the City's position that the injunction previously imposed no longer applies because of the new agreement. (Plaintiffs' Exs. B and C.) Plaintiffs immediately responded, asserting disagreement with the City's position. (Plaintiffs' Ex. E.) Plaintiffs further notified the City that they would be attending the BTL with the intent to express their religious beliefs and that if the City attempted to impede their expression, that Plaintiffs would bring a motion for contempt for violating the Court's injunction. (Id.)

On November 17, 2012, Plaintiff Steve Jankowski went to the BTL with three friends. (Plaintiffs' Ex. F (Declaration of Steve Jankowski ¶ 3).) Once they entered the event, his friend Michael Winandy began to distribute religious literature. (Id. ¶ 5.) Shortly thereafter, Duluth police officer Adam Hewitt approached Winandy and ordered him to move to what he referred to as the First Amendment Zone. (Id., Ex. G (Video).) Winandy tried to get the Officer to review the preliminary injunction order entered by this Court, but the Officer refused to do so and stated that even with an injunction order, Plaintiffs could not be inside private property. (Id.) Officer Hewitt then explained to Plaintiffs that if they wanted to engage in religious expression, the City Attorney had

directed the officers to direct them to the First Amendment Zone. (Id.) Winandy asked Officer Hewitt what would happen if they refused to leave, to which he responded that they would be escorted out, and if they came back in, they could be cited and/or jailed for trespass. (Id.) Winandy then stopped engaging in expression, and looked at the First Amendment zone and discovered such zone was not even inside the BTL. (Id.)

On November 19, 2012, the City filed a motion to vacate the preliminary injunction. Thereafter, Plaintiffs filed a motion to enforce the preliminary injunction and for contempt.

## II. Motion to Vacate or Modify Injunction

This Court has the discretion to vacate or modify an injunction. United States v. Northshore Min. Co., 576 F.3d 840, 848 (8th Cir. 2009). The Court should exercise this discretion when "the injunctive relief is no longer needed due to intervening circumstances." Id. (quoting Keith v. Mullins, 162 F.3d 539, 540-41 (8th Cir. 1998)). It is the City's position that the Order granting preliminary injunctive relief is moot, as the BTL is no longer governed by the Bentleyville Tour of Lights Agreement 2010-2013. While the City asserts a technically correct recitation of the injunction order, the Court nonetheless finds that the Order

granting injunctive relief should not be vacated as moot, because injunctive relief is still needed.

Plaintiffs have notified the City of their intent to attend the BTL and to engage in expressive activity protected by the First Amendment while attending such event as permitted by the Order granting injunctive relief. Whether or not Plaintiffs are entitled to continued injunctive relief requires the Court to analyze the nature of the forum at which Plaintiffs sought to engage in expression protected by the First Amendment. (See Memorandum Opinion and Order (Doc. No. 33 at 8).) At this time, however, such determination must be made in light of the terms of the 2012 Agreement.

The City asserts that as the 2012 Agreement grants BTLI exclusive use of the Park for this year's BTL event, the Park has been transformed to private property. The law is clear, however, that the City cannot change a traditional public forum by its own *ipse dixit*. See United States Postal Serv. v. Council of Greenberg Civic Ass'n, 453 U.S. 114, 133 (1981) ("Congress, no more than a suburban township, may not by its own *ipse dixit* destroy the 'public forum' status of streets and parks which have historically been public forums . . . "). Instead, the Court must look to the objective use and purpose of the forum to

determine the nature of such forum. For example, in <u>United Church of Christ v. Gateway Econ. Dev. Corp. of Greater Cleveland</u>, 383 F.3d 449, 452 (6th Cir. 2004), the court found that a private sidewalk encircling a sports complex was a traditional public forum as the sidewalk blended into the urban grid - it bordered the road and looked just like a public sidewalk - and because the sidewalk was a public thoroughfare. <u>See</u> also <u>Freedom from Religion Found., Inc. v. City of Marshfield</u>, 203 F.3d 487, 494-95 (7th Cir. 2000) (finding that private land that was once part of City land, and that continued to be used as a public park, is considered a public forum). If private property sold to private parties remains traditional public fora so long as it looks and functions like a park or street, then a park that is temporarily permitted by private parties remains a traditional public forum so long as it looks and functions as a public park.

Courts have consistently held that a private event that takes place in a traditional public forum, and is free and open to the public, does not transform the nature of the forum during such event for purposes of analyzing a First Amendment claim. <u>See</u> <u>Parks v. City of Columbus</u>, 395 F.3d 643 (6th Cir. 2005) ("The City cannot . . . claim that one's constitutionally protected rights disappear because a private party is hosting an event that remained free and open to the

9

public."); Startzell v. City of Philadelphia, Pennsylvania, 533 F.3d 183 (3d Cir. 2008)(adopting Parks and those cases that have recognized issuance of a permit will not transform traditional public fora at an event that is open and free to the public); Bays v. City of Fairborn, 668 F.3d 814, 820 (6th Cir. 2012) (finding that a community park that hosts a private event that remains open and free to the public remains a traditional public forum); Zalaski v. City of Hartford, 838 F.Supp. 2d 14, 36-37 (D. Conn. 2012) (finding no legal authority to support the city's position "that a permit allowing a private party to stage a public event has the effect of destroying the historical public forum status traditionally bestowed on parks and streets.")

Because the Park is a traditional public forum, and because this year's BTL event is free and open to the public despite the fact that the 2012 Agreement grants BTLI "exclusive use" of the Park, the Court finds that the Park has retained its public character during the 2012 BTL event. The Court further finds that granting exclusive use of the Park to BTLI has no impact on Plaintiffs' First Amendment rights. See Parks, 395 F.3d at 652 n.8 (noting that the plaintiff's First Amendment rights would not vanish if the permit authorized exclusive use, and that exclusive use would shift potential liability from the government to the

private entity who functions as a state actor). There being no material change as to the nature of the use of the Park during the current BTL event as compared to the nature of the use of the Park when the injunction order was originally issued, the Court finds that injunctive relief is still needed. Accordingly, the Court will deny the City's motion to vacate the Order granting injunctive relief and grant Plaintiffs' motion to enforce such Order.

### III. Motion to Hold Defendants in Contempt

The party seeking a contempt order has the burden of proving facts warranting such relief by clear and convincing evidence. Jake's Ltd., Inc. v. City of Coates, 356 F.3d 896, 899 (8th Cir. 2004). "To find contempt, the court must find that the order violated was clear and unambiguous and that the party to be charged had notice of the order but did not diligently attempt to comply." Popular Bank of Fla. v. Banco Popular de Puerto Rico, 180 F.R.D. 461, 465 (S.D. Fla. 1998). As set forth above, the Order granting injunctive relief remains in effect.

It is Plaintiffs' position that the City[1] has clearly violated the Court's Order

---

[1] Plaintiffs have stated in their Reply brief that the motion for contempt is not directed at Defendant Officer Nilsson.

granting preliminary injunctive relief.  Plaintiffs argue that the City cannot excuse its conduct by arguing the injunction is moot as a result of the 2012 Agreement.  Instead, the City should have first sought to vacate or modify the injunction prior to violating the injunction.  See Popular Bank of Fla., 180 F.R.D. at 466 (recognizing that a finding of contempt is supported where the enjoined party violates a clear order based on the belief that the order was invalid).  Plaintiffs point out that the 2012 Agreement was executed on October 4, 2012, therefore the City had ample time to request the Court to clarify, modify or vacate the Order before violating it.  The burden was on the City to seek judicial resolution first, before taking actions into its own hands.  See, e.g., McComb v. Jacksonville Paper Co., 336 U.S. 187, 192 (1949); Chaganti & Assocs., P.C. v. Nowotny, 470 F.3d 1215, 1224 n. 2 (8th Cir. 2006).

The Order granting injunctive relief enjoined the City and its officers "from interfering with or prohibiting Plaintiffs and other third party speakers from engaging in protected expression, in the form of peaceful distribution of literature, display of signs and engaging in dialogue, in Bayfront Festival Park during the 2011 Tour of Lights event and all other future Tour of Lights events that are governed by the Bentleyville Tour of Lights Agreement 2010-2013, or

until further Order of this Court." (Mem. Op. and Order at 23.)

The City asserts that based on this language, the injunction applied to BTL events either governed by the Bentleyville Tour of Lights Agreement 2010-2013 **or** until further Order of the Court. This is not an unreasonable interpretation. Because the language of the Court's injunction was subject to more than one interpretation, the Court will not find the City in contempt, as the Order was not clear and unambiguous. The Court will, however, take the opportunity to clarify its previous order to ensure that the Order accurately reflects the spirit and intent of the December 20, 2011 Memorandum Opinion and Order.[2]

IT IS HEREBY ORDERED that:

1. The City's Motion to Vacate Preliminary Injunction [Doc. No. 104] is DENIED;

2. Plaintiffs' Emergency Motion to Enforce Preliminary Injunction and to Hold Defendants' in Contempt [Doc. No. 109] is GRANTED in part and DENIED in part as set forth in this Memorandum Opinion

---

[2] If the in the future the City believes that circumstances have materially changed, the City must first seek to vacate or modify the injunction prior to violating the injunction. See Popular Bank of Fla., 180 F.R.D. at 466 (recognizing that a finding of contempt is supported where the enjoined party violates a clear order based on the belief that the order was invalid).

and Order; and

3. The Order dated December 20, 2011 is hereby amended as follows:

Defendants are hereby enjoined from interfering with or prohibiting Plaintiffs and other third party speakers from engaging in protected expression, in the form of peaceful distribution of literature, display of signs and engaging in dialogue, in Bayfront Festival Park during the 2011 Tour of Lights event, the 2012 Tour of Lights event and all other future Tour of Lights events that take place during the pendency of this action, or until further Order of this Court.

Date: December 5, 2012

                                      s/ Michael J. Davis
                                      Michael J. Davis
                                      Chief Judge
                                      United States District Court